UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORGE CLARK and VELMA CLARK, | § | |
| | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-3590-B |
| | § | |
| DEUTSCHE BANK NATIONAL | § | |
| TRUST COMPANY, AS TRUSTEE FOR | § | |
| MORGAN STANLEY ABS CAPITAL | § | |
| INC. TRUST 2006-HE3, and WELLS | § | |
| FARGO BANK, N.A. d/b/a AMERICA'S | § | |
| SERVICING COMPANY, | § | |
| | § | |
|    Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss (doc. 19), filed by Defendants Deutsche Bank

National Trust Company, as Trustee for Morgan Stanley ABS Capital Inc. Trust 2006-HE3 and

Wells Fargo Bank, N.A. d/b/a/ America's Servicing Company on February 2, 2015. For the reasons

set forth below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I.

## BACKGROUND[1]

A.   *Factual Background*

This case arises out of Plaintiffs' attempts to obtain a modification of their home mortgage

loan and avoid the foreclosure of their home. On or about July 2, 1992, Plaintiffs George Clark and

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs' First Amended Complaint (doc. 12) and from the attachments and documents incorporated therein by reference. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

- 1 -

Velma Clark purchased the property located at 4313 Lake Hill Drive, Rowlett, Texas (the "Property"). Doc. 12, Am. Compl. ¶¶ 7–8. Subsequently, on January 20, 2006, Plaintiffs obtained a home equity loan, secured by the Property; they executed a Texas Home Equity Fixed/Adjustable Rate Note (the "Note") payable to New Century Mortgage Corporation, as well as a Texas Home Equity Security Instrument (First Lien) (the "Deed of Trust"), which granted a security interest in the Property to ensure repayment of the Note. *Id.* at ¶ 8; *see* doc. 12-1, Ex. A to Am. Compl.; *see also* doc. 20, App. in Support of Defs.' Mot. to Dismiss ("Defs.' App."), Exs. A, Note; B, Deed of Trust. Thereafter, New Century Mortgage Corporation assigned the Note and Deed of Trust to Defendant Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital Inc. Trust 2006-HE3 ("Deutsche Bank"), and Defendant Wells Fargo Bank, N.A. d/b/a/ America's Servicing Company ("ASC") became the loan servicer. *See* Am. Compl. ¶ 8; Defs.' App. Ex. D, Assignment.

Plaintiffs allege that Defendants engaged in improper practices in processing several aspects of the loan and in addressing issues related to Plaintiffs' attempt at modifying their loan agreement. They first contend that in July 2007, ASC incorrectly determined that Plaintiffs' homeowners' insurance for the Property had been cancelled, when in fact Plaintiffs had maintained the required insurance coverage. Am. Compl. ¶ 9. Plaintiffs allege that they then provided ASC with proof of their insurance payments on multiple occasions. *Id.* However, despite ASC's receipt of this proof of insurance payments and its representation that it was evaluating the issue and would correct any errors, ASC notified Plaintiffs that an escrow deficiency remained on their loan. *Id.* at ¶¶ 9–10. Shortly thereafter, in August 2007, Plaintiffs were notified that their mortgage payments and the property taxes owed on the Property were delinquent, even though Plaintiffs contend that they had previously provided ASC with proof of payment of the delinquent taxes. *Id.* at ¶ 10.

ASC allegedly continued contacting Plaintiffs in September 2007, asserting that it had no proof of Plaintiffs' payment of insurance or property taxes, despite acknowledging that it had received proof of these payments. *Id.* at ¶ 11. Additionally, Plaintiffs allege that ASC refused to accept any payments "because of the escrow issue." *Id.* After resubmitting all documents evidencing proof of payment, Plaintiffs wrote a letter to ASC regarding these matters. *Id.* at ¶ 12. In December 2007, ASC responded that certain funds were placed in an unapplied account, but that Plaintiffs would be required to pay an additional amount to reach the sum needed for the monthly payment. *Id.* However, when Plaintiffs attempted to pay this additional amount, ASC allegedly refused to accept it. *Id.* ASC further informed Plaintiffs that it would need sixty days to resolve the issues regarding the escrow account. *Id.*

Plaintiffs allege that in January 2008, they received a property insurance refund in the amount of $2,508.31 as well as a notification that their November and December 2007 payments had been applied to a suspense account. *Id.* at ¶ 13. In July 2008, ASC again requested that Plaintiffs submit proof of payment of the property taxes, and ASC subsequently made a payment of $6,063.70 for the property taxes on the Property. *Id.*

Some time after that, Plaintiffs applied for a loan modification. *See id.* at ¶ 14. During this time, when Plaintiffs attempted to make a payment on their loan, ASC informed them that due to the loan modification review process, permission had to be obtained to accept Plaintiffs' payments. *Id.* Thus, according to Plaintiffs, the payment they submitted in January 2009 was held in an unapplied funds account. *Id.* at ¶ 15.

In April 2009, ASC informed Plaintiffs that their loan modification agreement had been approved, and Plaintiffs accepted the terms of this modification (the "Loan Modification

Agreement"). *Id.* at ¶ 16. However, in July 2011, Plaintiffs again sought a modification of their loan agreement, and their loan thus underwent yet another review process. *Id.* at ¶ 17. Plaintiffs assert that, while they paid their June 2011 payment in September 2011, their other attempts at payment were rejected. *Id.* at ¶ 18. Plaintiffs aver that they continued to pursue the loan modification, immediately providing additional documents to ASC when requested and consistently calling to confirm the status of the loan modification review. *Id.* According to Plaintiffs, in October 2011, ASC informed them that their loan modification application had been sent to underwriting in August 2011, and that in September 2011, it had been determined that the loan was not eligible for the modification program for which it had been reviewed, and would instead be reviewed for a modification under the Home Affordable Modification Program ("HAMP"). *Id.*

Plaintiffs thus pursued the modification process under HAMP, completing documents, providing information, and resubmitting paperwork as requested from October 2011 through April 2012. *Id.* at ¶¶ 19–20. However, on May 2, 2012, Plaintiffs received a notice of default on their loan. *Id.* at ¶ 21. Next, on May 29, 2012, Plaintiffs were informed that their loan modification application had been denied because it had been in process for more than twelve months. *Id.* Then, on September 10, 2012, Plaintiffs received a notice of acceleration on their loan obligations. *Id.*

In 2013, Plaintiffs requested another loan modification. *Id.* at ¶ 22. Notwithstanding this request, Plaintiffs received a letter "confirming their request for a short sale of the property," but were later instructed by ASC to disregard the letter "because their loan was in processing." *Id.* Plaintiffs completed all necessary documents for this modification in October 2013, and ASC acknowledged receipt of these documents in November 2013. *Id.* at ¶ 23. Subsequently, in December 2013, Plaintiffs received a letter of eligibility for a HAMP loan. *Id.* at ¶ 24. However, a few days later, they

received a letter from ASC indicating that they did not meet the HAMP requirements because state restrictions prohibit ASC from adjusting the original terms of the mortgage. *Id.* Lastly, Plaintiffs allege that on February 12, 2014, Defendants filed a lawsuit seeking an order of foreclosure on the Property. *Id.* at ¶ 25.

Based on these alleged events, Plaintiffs filed the present lawsuit against Defendants, asserting claims for breach of contract and violations of the Texas Debt Collection Practices Act. *Id.* at ¶¶ 26–38. Plaintiffs further contend that Defendants may not foreclose on the Property, as the doctrine of "unclean hands" prohibits them from seeking this remedy. *Id.* at ¶¶ 39–41. Finally, Plaintiffs request an accounting and a declaratory judgment establishing the parties' rights with respect to the Note and Deed of Trust. *Id.* at ¶¶ 42–47.

B.      *Procedural Background*

Plaintiffs filed the present lawsuit in the 191st District Court in Dallas County, Texas on August 28, 2014. Doc. 1-4, Pls.' Orig. Pet. Defendants subsequently removed this action to this Court on October 3, 2014. Doc. 1, Notice of Removal. On December 9, 2014, Plaintiffs filed their First Amended Complaint (doc. 12), which Defendants move to dismiss through the present Motion to Dismiss (doc. 19), filed on February 2, 2015. Plaintiffs submitted their Response to Defendants' Motion (doc. 25) on March 9, 2015, and Defendants filed their Reply (doc. 32) on April 13, 2015. As such, the Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

Defendants seek the dismissal of Plaintiffs' claims for breach of contract and violation of the Texas Debt Collection Practices Act, asserting that they are barred by the applicable statutes of limitations and are not supported by sufficient factual allegations. Doc. 19, Defs.' Mot. to Dismiss

("Defs.' Mot.") 8–19. Defendants further seek to dismiss Plaintiffs' request for an accounting and a declaratory judgment. *Id.* at 20–21. Lastly, they object to Plaintiffs' assertion that the doctrine of "unclean hands" bars them from foreclosing on the Property. *Id.* at 19–20. The Court therefore addresses the parties' respective arguments as to these claims, in turn, below.

A.    *Breach of Contract*

Defendants move to dismiss Plaintiffs' breach of contract claim, under which Plaintiffs allege that Defendants violated the provision of the Deed of Trust governing the application of their payments to their mortgage account. Defs.' Mot. 8–12; Am. Compl. ¶¶ 26–28. Defendants argue that this claim is time-barred and further lacks sufficient factual support to qualify as a claim upon which relief can be granted. Defs.' Mot. 8–12.

1.    Statute of Limitations

Defendants first seek the dismissal of Plaintiffs' claim for breach of contract on the ground that it is barred by the applicable statute of limitations. Defs.' Mot. 8. They correctly note that the limitations period for this claim is four years. *Id.* at 9; Tex. Civ. Prac. & Rem. Code § 16.004(a); *Smith Int'l, Inc. v. Eagle Group, LLC*, 490 F.3d 380, 386 (5th Cir. 2007).

Defendants insist that "[a]ll of the referenced allegations involve activity that took place before January 1, 2010." Defs.' Mot. 8 (citing Am. Compl. ¶¶ 9–16). Because contract claims accrue when the contract at issue is breached, Defendants maintain that the limitations period for Plaintiffs' breach of contract claim expired, at the latest, four years after the occurrence of these alleged events, or January 1, 2014. *Id.*; *Smith Int'l, Inc.*, 490 F.3d 380 at 387. This lawsuit, however, was not filed until nearly eight months after this date, on August 28, 2014. *See* Pls.' Orig. Pet. Defendants therefore contend the breach of contract claim is time-barred. Defs.' Mot. 8

Plaintiffs do not dispute that a four-year statute of limitations applies, but they indicate that "Defendants ignore the facts alleged by Plaintiffs that occurred from 2011 until 2012," which they claim are within the limitations period. Doc. 26, Pls.' Resp. Br. ("Pls.' Resp.") 8–9. In reply, Defendants continue to urge the Court to dismiss Plaintiffs' claim on limitations grounds, but they nevertheless concede that certain allegations fall within the limitations period. Doc. 32, Defs.' Reply 3. Defendants argue that the only allegation that is not time-barred is Plaintiffs' "contention that around September 2011, Wells Fargo rejected Plaintiffs' attempted partial payment of the total amount due and owing at that juncture for the loan on the Property." *Id.* (citing Am. Compl. ¶ 18).

Due to the existence of at least some facts alleged to have occurred within four years of the date of the filing of this lawsuit, and in light of the early stage of this litigation and the possibility that discovery may reveal additional events within the limitations period, the Court concludes that dismissal on limitations grounds is unwarranted.

## 2.    Sufficiency of the Allegations

The Court thus turns to the sufficiency of Plaintiffs' breach of contract claim. Plaintiffs assert that Defendants violated the terms of the Deed of Trust by misapplying and refusing to accept their mortgage payments. Am. Compl. ¶¶ 26–28. Defendants argue that Plaintiffs' own breach precludes them from asserting this claim, and they further maintain that Plaintiffs' factual allegations do not indicate that a breach of the Deed of Trust occurred. Defs.' Mot. 10–12.

The elements of a claim for breach of contract under Texas law are: (1) the existence of a valid contract; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach of the contract; and (4) damages to the plaintiff resulting from the breach. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003) (citing *Palmer v. Espey Hous. & Assocs.*, 84 S.W.3d 345, 353 (Tex.

App.—Corpus Christi 2002, pet. denied)).

As their first basis for dismissal, Defendants argue that Plaintiffs are precluded from asserting the breach of contract claim because they have not performed their own obligations under the Note and Deed of Trust. Defs.' Mot. 10. Specifically, Defendants contend that Plaintiffs were in default on their payment requirements due to the partial payments they submitted in November and December of 2007 as well as in January of 2009. *Id.* at 11. Moreover, Defendants assert that Plaintiffs were three months delinquent on their payments as of September 13, 2011. *Id.* Thus, Defendants insist that, because Plaintiffs do not allege that they made payments to cure their default, and because of their alleged breach of their own obligations under the Note and Deed of Trust, they cannot assert a breach of contract claim against Defendants. *Id.*

Defendants rely on the case *Williams v. Wells Fargo Bank, N.A.* for the proposition that a plaintiff who has not performed his obligations under a loan agreement is precluded from maintaining a breach of contract claim against the relevant creditors. 560 F. App'x 233, 238 (5th Cir. 2014); Defs.' Mot. 11. However, in *Williams*, the only basis for the plaintiffs' claim was that the defendants had unlawfully accelerated the note and foreclosed on their property. *Williams*, 560 F. App'x at 238. The Fifth Circuit affirmed the dismissal of the plaintiffs' breach of contract claim on the grounds that they had not identified which provision of the deed of trust the defendants had violated and had not alleged that they were current on their payment obligations. *Id.* However, the factual allegations in the present case differ from those at issue in *Williams*, as Plaintiffs here contend that Defendants misapplied their payments in violation of Section 2 of the Deed of Trust, titled "Application of Payments or Proceeds," which in turn contributed to their default on their loan obligations. Am. Compl. ¶¶ 26–28; Pls.' Resp. 10.

Moreover, while it is true that "an individual in breach cannot bring a cause of action for breach against another contracting party," the Fifth Circuit has recognized that situations similar to Plaintiffs' create a possible exception to this general rule. *Peters v. JP Morgan Chase Bank, N.A.*, 600 F. App'x 220, 224 (5th Cir. 2015) (citing *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003)). For example, "[w]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Id.* (quoting *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013)). In *Peters*, the Fifth Circuit considered the plaintiff's allegation that the defendant had misapplied her payments to an escrow account, which resulted in her default on her loan obligations. *Id.* The court noted that if the defendant's actions constituted a material breach—a question of fact—plaintiff "may not have been required to continue to comply with the contract." *Id.*; *id.* at 224 n.4. The court further noted that plaintiff "could argue that [the defendant's] rejection of her mortgage payments, even if not a material breach, rendered performance impossible and that, as a result, any subsequent breach does not bar her claim." *Id.* (citing *Miller v. Baum*, 400 F.2d 176, 178 (5th Cir. 1968)).

Like the plaintiff in *Peters*, Plaintiffs here allege that Defendants breached the Deed of Trust by both misapplying and refusing to accept their payments, and they indicate that this breach relates to Section 2 of the Deed of Trust, titled "Application of Payments or Proceeds." Am. Compl. ¶¶ 26–28; Pls.' Resp. 10. Plaintiffs' allegations therefore suggest that the default and acceleration of their debt occurred at least in part because of Defendants' actions in misapplying or rejecting the payments they attempted to make, and they thus bring this breach of contract claim on these grounds. Am. Compl. ¶ 27; Pls.' Resp. 10. In light of the above, the Court concludes that the breach of contract claim is not precluded by Defendants' allegation that Plaintiffs defaulted on their loan obligations.

Defendants raise an additional argument in support of dismissing Plaintiffs' breach of contract claim based on the refusal to accept certain payments. They maintain that Plaintiffs' allegations do not indicate that Defendants breached the Deed of Trust, because the Deed of Trust "expressly authorize[s] ASC to reject Plaintiffs' partial payments of the full monthly amount due, or accept the partial payments and hold the partial payments in unapplied funds until Plaintiffs made payment sufficient to bring the Loan current." Defs.' Mot. 11 (citing Deed of Trust § 1). Moreover, Defendants argue that the Deed of Trust does not require ASC to accept delinquent payments. *Id.* (citing Deed of Trust § 2).

Indeed, Section 1 of the Deed of Trust permits ASC to "return any payment or partial payment if the payment or partial payments are insufficient to bring the [loan] current," or to "accept any payment or partial payment insufficient to bring the [loan]" current, and hold the partial payment in unapplied funds instead of applying it to the Plaintiffs' mortgage account. Defs.' App. Ex. B, Deed of Trust § 1. Section 2 of the Deed of Trust further provides that, if ASC receives a payment for a delinquent payperiod that includes a sufficient amount to pay any late charge due, "the payment *may* be applied to the delinquent payment and the late charge." *Id.* § 2 (emphasis added). In addition, "[i]f more than one [payment] is outstanding, [ASC] may apply any payment received from [Plaintiffs] to the repayment of the [payment] if, and to the extent that, each payment can be paid in full." *Id.* Therefore, to the extent Plaintiffs assert that Defendants breached the Deed of Trust by refusing to apply payments that were not sufficient to bring the loan current, their claim is precluded by the language of the Deed of Trust, and therefore must fail. Because this is the only allegation that Defendants discuss in seeking to dismiss Plaintiffs' breach of contract claim, their Motion is **GRANTED**, and Plaintiffs' breach of contract claim based on Defendants' refusal to accept certain

payments is dismissed.

The Court recognizes, however, that in addition to claiming that Defendants refused to apply some of their payments to their account, Plaintiffs allege that Defendants also breached the Deed of Trust by *misapplying* their payments; they indicate that "[p]ayments received are to be applied to interest, then principal, funds for escrow items, then any remaining amount is to be applied to late charges." Am. Compl. ¶ 27. This allegation echoes a provision of Section 2 of the Deed of Trust, which states:

> [A]ll payments accepted and applied by [ASC] shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [governing funds for escrow items]. Any remaining amounts shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance on the Note.

Defs.' App. Ex. B, Deed of Trust § 2.

Therefore, Plaintiffs allege—although in a broad and conclusory manner—that Defendants failed to apply payments received in the order outlined in Section 2 of the Deed of Trust. *See* Am. Compl. ¶ 27. While this specific claim is not supported by sufficient factual allegations, it is distinct from the claims upon which Defendants focus in their Motion to Dismiss; nowhere in their briefing do Defendants object to Plaintiffs' assertion that the order in which the received payments were applied violated the Deed of Trust. *See* Defs.' Mot. 11–13; Defs.' Reply 4–6. Accordingly, the Court declines to dismiss this portion of Plaintiffs' breach of contract claim. The Court notes, however, that Plaintiffs' allegations with respect to this matter are conclusory and do not present sufficient factual support to permit an inference that Defendants breached the Deed of Trust. As this Court has

previously stated in considering similar claims, "[a]t the very least, [Plaintiffs] must identify which payments were misapplied and state [their] reasons for believing they were misapplied," noting why the application of the payments conflicts with the Deed of Trust. *See Searcy v. Wells Fargo Home Mortg.*, No. 3:14-CV-3411-B, 2015 WL 1182836, at *3 (N.D. Tex. Mar. 16, 2015). However, because this is the Court's first review of Plaintiffs' claims, and because Defendants have not addressed the specific allegations regarding the order in which the payments were applied, the Court is unable to dismiss this claim, and instead affords Plaintiffs an opportunity to amend their pleadings so as to address the deficiencies noted in this Order.

In sum, Defendants' Motion to Dismiss Plaintiffs' breach of contract claim based on the allegation that Defendants refused to apply payments that were not sufficient to bring the loan current is **GRANTED**, and this claim is dismissed. However, the Court notes that an additional basis for Plaintiffs' breach of contract claim exists—Defendants' alleged misapplication of the received payments, in violation of Section 2 of the Deed of Trust. Because Defendants have not discussed the claim based on these particular allegations in their briefing, the Court is unable to dismiss it. It instead notes the allegations' deficiencies and allows Plaintiffs the opportunity to correct them in a subsequent filing, as discussed in further detail at the conclusion of this Order.

B.      *Violations of the Texas Debt Collection Practices Act*

Defendants next move to dismiss Plaintiffs' claims that Defendants violated several provisions of the Texas Debt Collection Practices Act, Texas Finance Code §§ 392.001 *et seq.*, (the "TDCPA") by using misrepresentations and other unlawful means in collecting Plaintiffs' debt. Defs.' Mot. 12–19; Am. Compl. ¶¶ 29–38. Defendants argue that these claims are barred by the statute of limitations and the economic loss doctrine and further lack sufficient factual support to qualify as

viable claims under the TDCPA. Defs.' Mot. 12–19.[2]

1.    Statute of Limitations

Defendants first contend that Plaintiffs' claims for violations of the TDCPA must be dismissed because they are barred by the statute's two-year limitations period. Defs.' Mot. 8. Defendants indicate, and Plaintiffs do not dispute, that the limitations period for TDCPA claims is two years. *Id.* at 9; Pls.' Resp. 8–9; Tex. Civ. Prac. & Rem. Code § 16.003(a); *Williams v. Chase Home Fin., LLC*, No. 3:13-CV-1307-G (BH), 2014 WL 46233, at *4 (N.D. Tex. Jan. 6, 2014).

Defendants claim that "[a]ll of the referenced allegations involve activity that took place before January 1, 2010." Defs.' Mot. 8 (citing Am. Compl. ¶¶ 9–16). Therefore, Defendants contend that the limitations period for Plaintiffs' TDCPA claims expired, at the latest, two years following the date of these alleged events, or January 1, 2012. *Id.* at 10. Defendants note that Plaintiffs filed this lawsuit on August 28, 2014, over two and a half years after their TDCPA claims became time-barred. *Id.* Plaintiffs, however, correctly observe that Defendants ignore that the complaint also discusses events alleged to have occurred between the years 2012 and 2014, which fall within the limitations period. Pls.' Resp. 8–9; *see* Am. Compl. ¶¶ 21–25.

While some of Plaintiffs' allegations may not support their TDCPA claims because they are barred by the two-year statute of limitations, not all allegations fall into this classification. Because Plaintiffs filed this lawsuit on August 28, 2014, only claims based on events occurring prior to August 28, 2012 are time-barred. The Court thus turns to the sufficiency of the remaining allegations

---

[2] Because the Court dismisses three of Plaintiffs' four claims under the TDCPA due to the insufficiency of factual allegations, the Court discusses the applicability of the economic loss doctrine only when discussing the TDCPA claim that is not dismissed due to lack of factual support—the claim under section 392.303(a)(2).

regarding events that occurred within two years of the filing of this case.

2.      Sufficiency of the Allegations

The Court therefore considers the viability of Plaintiffs' claims under the TDCPA. Plaintiffs allege that Defendants violated the TDCPA in the following ways: (1) using false representations or deceptive means to collect a debt in violation of section 392.304(a)(19); (2) misrepresenting the character, extent, or amount of a consumer debt in violation of section 392.304(a)(8); (3) attempting to collect charges incidental to the obligation in violation of section 392.303(a)(2); and (4) foreclosing when the law prohibited it in violation of section 392.301(a)(8). Am. Compl. ¶ 32. In their Motion to Dismiss, Defendants insist that Plaintiffs' allegations cannot support their TDCPA claims. Defs.' Mot. 14–19. The Court therefore examines the claims under each relevant section of the TDCPA, in turn, below.

i.      *Sections 392.304(a)(8) and 392.304(a)(19)*

Plaintiffs first allege that Defendants violated sections 392.304(a)(8) and 392.304(a)(19) of the TDCPA because they "deceptively instructed and encouraged [them] to apply for the HAMP loan modification." Am. Compl. ¶ 33. Plaintiffs further allege that Defendants misrepresented that the loan was in underwriting and that they could not accept Plaintiffs' payments because the loan was in the modification review process. *Id.* In addition, Plaintiffs assert that "Defendants misrepresented the character and extent of Plaintiffs' mortgage loan." *Id.* ¶ 34. Because Plaintiffs do not distinguish between the allegations supporting their claim under section 392.304(a)(8) and those supporting their claim under section 392.304(a)(19), the Court considers whether Plaintiffs' assertions are sufficient to state a claim for a violation of either section.

Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent,

- 15 -

or amount of a consumer debt." Tex. Fin. Code § 392.304(a)(8). To state a viable claim for a

violation of section 392.304(a)(8), a plaintiff must demonstrate that the defendant made a false or

misleading statement that "led [plaintiff] to think differently with respect to the character, extent,

amount, or status of his debt." *Miller v. BAC Home Loan Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir.

2013).

    With respect to the allegation that Defendants made misrepresentations in connection with

the modification of the loan, Defendants argue that such statements do not relate to the character,

extent, or amount of the debt, as section 392.304(a)(8) requires. Defs.' Mot. 16. The Court agrees.

The Fifth Circuit has noted that statements concerning the status of a loan modification application

do not relate to the "character, extent, or amount of" a debt, and therefore cannot support a claim

for a violation of section 392.304(a)(8). *Thompson v. Bank of Am. N.A.*, 783 F.3d 1022, 1026 (5th

Cir. 2015); *see also Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 348 (5th Cir. 2014) (holding

that promising plaintiff's qualification for a loan modification, while not to be condoned, does not

constitute a misrepresentation regarding the character, extent, amount, or status of the debt).

    Next, regarding the assertion that Defendants "misrepresented that they could not accept

Plaintiffs' payments because the loan was in the modification process," Defendants note that the only

allegation suggesting such behavior dates from 2008 and is therefore time-barred. Defs.' Reply 7. The

allegation in question proceeds as follows: "On November 3, 2008, Plaintiffs attempted to make a

payment in the amount of $1,976.62 by phone and spoke with Nhdi, who placed Plaintiffs on hold

and stated that he needed permission to receive payments because this loan is in the process of

modification." Am. Compl. ¶ 14. Therefore, even if such a statement could be construed as a

misrepresentation regarding the character, extent, or amount of the debt, it is time-barred, because

it was allegedly made in 2008, over two years prior to the initiation of this lawsuit in August 2014. Tex. Civ. Prac. & Rem. Code § 16.003(a); *Williams*, 2014 WL 46233, at *4 (stating that the statute of limitations for TDCPA claims is two years). In sum, Plaintiffs have failed to present allegations suggesting an actionable violation of section 392.304(a)(8).

The Court therefore considers whether the allegations discussed above can support a claim for violation of section 392.304(a)(19). This section has been characterized as a "'catch-all' provision, prohibiting a debt collector from 'using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.'" *Woods v. Bank of Am., N.A.*, No. 3:11-CV-1116-B, 2012 WL 1344343, at *7 (N.D. Tex. Apr. 17, 2012) (quoting Tex. Fin. Code § 392.304(a)(19)). In reviewing allegations regarding a loan modification application similar to those asserted by Plaintiffs in the present case, the Fifth Circuit has indicated that "[c]ommunications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its modification and thus they do not state a claim under Section 392.304(a)(19)." *Thompson*, 783 F.3d at 1026. Because allegations regarding the loan modification process cannot support a claim for violation of section 392.304(a)(19), and because Plaintiffs' remaining allegation relates to an event that occurred in 2008 and is therefore barred by the two-year statute of limitations, as discussed above, the Court concludes that Plaintiffs have failed to state a claim under section 392.304(a)(19).

In light of the above, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' claims under sections 392.304(a)(8) and 392.304(a)(19) of the TDCPA.

      *ii.*      *Section 392.303(a)(2)*

Next, Plaintiffs claim that Defendants violated section 392.303(a)(2) of the TDCPA, which

prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2). Specifically, Plaintiffs maintain that Defendants "collect[ed] unauthorized incidental charges." Am. Compl. ¶ 35. Seeking dismissal of this claim, Defendants argue that the Deed of Trust expressly authorizes them to charge fees and penalties as a result of Plaintiffs' default on their loan obligations. Defs.' Mot. 17.

Indeed, the Deed of Trust does authorize charges for interest, escrow items, late fees, attorney's fees, and other assessments. *See* Deed of Trust §§ 1, 3, 4, 9. This, Plaintiffs do not dispute. Pls.' Resp. 15. However, they clarify that, while Defendants are permitted to assess certain fees, they "are not authorized to over-charge for late fees and corporate advances." *Id.* Therefore, Plaintiffs' basis for their claim under section 392.303(a)(2) is not the general allegation that Defendants charged them fees and penalties, but that Defendants assessed fees beyond those permitted by the Deed of Trust, especially with respect to late fees and corporate advances. *Id.*

As an additional argument in favor of dismissal, Defendants insist that Plaintiffs "fail to specifically identify any interest, fees or charges that Defendants attempted to collect that were not authorized." Defs.' Mot. 17. However, Defendants present no authority establishing that such specificity is required at the pleading stage to state a claim for a violation of section 392.303(a)(2). *See id.; see also Sanchez v. Bank of Am., N.A.*, No. 3:14-CV-2571-B, 2015 WL 418084, at *4 (N.D. Tex. Jan. 30, 2015). Accordingly, the Court concludes that Plaintiffs have sufficiently alleged that Defendants collected unauthorized fees in addition to any fees permitted by the relevant provisions of the Deed of Trust. *See Sanchez*, 2015 WL 418084, at *4 (finding plaintiff's "allegation that

[defendant] placed fees, such as attorney fees and corporate advances, on [p]laintiff's mortgage account sufficient to state a claim for a violation of section 392.303(a)(2).").

However, Defendants further argue that the economic loss doctrine bars Plaintiffs' recovery under this section of the TDCPA. Defs.' Mot. 12.[3] The economic loss doctrine, also described as the independent injury rule, "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 930 (N.D. Tex. 2014) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). But in asserting their claim under section 392.303(a)(2), Plaintiffs do not seek recovery for economic losses resulting from Defendants' failure to perform under the Deed of Trust or another contract; they instead allege that Defendants "collected unauthorized incidental charges" in violation of the TDCPA. Am. Compl. ¶ 35. Section 392.303(a)(2) does not provide for an additional mechanism to recover on a breach of contract claim, but rather prohibits the collection of "interest or a charge, fee, or expense incidental to the obligation *unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.*" Tex. Fin. Code § 392.303(a)(2) (emphasis added). Therefore, while there is no indication, based on the parties' pleadings, that the Deed of Trust prohibits the additional charges at issue, and while placing such charges would not violate the Deed of Trust or support a claim for breach of contract, such charges would, however, support a claim for violation of the TDCPA. Plaintiffs have alleged precisely that—a violation of the additional obligation created by the TDCPA prohibiting the charging of fees not expressly authorized by the agreement. This cause of action

---

[3] Defendants maintain that the economic loss doctrine precludes all of Plaintiffs' TDCPA claims. Defs.'s Mot. 12. Because the Court dismisses Plaintiffs' remaining TDCPA claims on other grounds, it need not decide whether the economic loss doctrine would otherwise bar these claims.

therefore does not "result[] from the failure of a party to perform under a contract," and thus is not precluded by the economic loss doctrine. *Johnson*, 999 F. Supp. at 930.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' claim under section 392.303(a)(2) of the TDCPA.

      *iii.*     *Section 392.301(a)(8)*

Finally, Plaintiffs allege that Defendants violated section 392.301(a)(8) of the TDCPA "by foreclosing when the law prohibits it." Am. Compl. ¶ 32. This section of the TDCPA prohibits a debt collector from using "threats, coercion, or attempts to coerce" in "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). Defendants insist that Plaintiffs cannot maintain an action under section 392.301(a)(8) because they have admitted to being in default on their loan obligations, which in turn grants Defendants the right to accelerate the loan and foreclose on the Property pursuant to the terms of the Deed of Trust. Defs.' Mot. 18. In addition, Defendants argue that Plaintiffs' claim fails because they have not specifically identified any threats made in connection with the alleged foreclosure, as section 392.301(a)(8) requires. *Id.* In response, Plaintiffs merely state, without presenting explanations or authority in support, that Defendants' actions were prohibited by law, as their right to foreclose on the Property had not "matured." Pls.' Resp. 15.

After reviewing the arguments and authority presented by the parties, the Court concludes that Plaintiffs fail to assert a claim under section 392.301(a)(8), as Defendants had a contractual right to foreclose on Plaintiffs' Property and thus did not threaten "to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). In the present case, Plaintiffs admit that they were in default on their loan obligations. Am. Compl. ¶¶ 12, 13, 15, 20. Moreover, the Deed of Trust authorizes Defendants to foreclose on the Property in the event of Plaintiffs' default. *See* Deed of Trust §§ 1,

9, 18, 22. Therefore, there is no indication that in foreclosing on the Property, Defendants did anything more than "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings," which the TDCPA expressly permits. Tex. Fin. Code § 392.301(b)(3); *see Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012) ("[F]oreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage."); *Burr v. JPMorgan Chase Bank, N.A.*, No. 4:11-CV-03519, 2012 WL 1059043, at *7 (S.D. Tex. Mar. 28, 2012) ("[I]t is well established that [defendant's] foreclosure on the [plaintiffs'] home after the [plaintiffs admittedly defaulted on their mortgage loan is not an action prohibited by law."). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' claim for violation of section 392.301(a)(8) of the TDCPA.

C.    *Accounting*

The Court next considers Plaintiffs' request for an accounting. Am. Compl. ¶ 42. An accounting is an equitable remedy that may be appropriate when "the facts and accounts presented are so complex that adequate relief may not be obtained at law." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002). "To be entitled to an accounting, a plaintiff usually must have a contractual or fiduciary relationship with the party from which the plaintiff seeks the accounting." *Id.*

Defendants oppose the grant of this relief, arguing that there are no viable underlying claims supporting this remedy and that Plaintiffs have failed to allege sufficient facts indicating that the loan account is so complex that adequate relief cannot be obtained at law. Defs.' Mot. 20.

In the present case, Plaintiffs present no justification for their request for an accounting,

instead solely indicating that they seek "an accounting of all transactions on their mortgage loan." Am. Compl. ¶ 42. Plaintiffs have neglected to plead any facts from which the Court may infer that a duty to account is implied under either the Note or the Deed of Trust. *See T.F.W. Mgmt., Inc.*, 79 S.W.3d at 718–19. Lastly, there is no indication that a fiduciary relationship exists between the parties. *See Williams v. Countrywide*, 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007) (stating that Texas law does not recognize a fiduciary relationship between a lender and a borrower). Accordingly, the Court concludes that there is no basis for Plaintiffs' request for an accounting and therefore **GRANTS** Defendants' Motion to Dismiss this claim.

D.    *Declaratory Judgment*

Finally, the Court examines Plaintiffs' request for a declaratory judgment. Am. Compl. ¶¶ 43–47. Defendants' sole argument for dismissing this request is the absence of a viable underlying claim. Defs.' Mot. 20. As the Court has recognized that viable claims remain for breach of contract and for violation of section 392.303(a)(2) of the TDCPA, Defendants' argument in favor of dismissing this claim is left without merit. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss this claim.[4]

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** the Motion

---

[4] The Court need not address the viability of Plaintiffs' assertion that Defendants are precluded from foreclosing on the Property by the doctrine of "unclean hands," as this is not an affirmative claim or cause of action under Texas law. *See Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) ("Texas courts have long held that the affirmative defense of unclean hands is available only in equity."). Here, Defendants have asserted no claims against Plaintiffs pursuant to which Plaintiffs could invoke the defense of unclean hands. *See* Defs.' Mot. 19. Accordingly, to the extent Plaintiffs seek to assert a claim for unclean hands, such claim must fail, and Defendants' Motion on this issue is **GRANTED**.

to Dismiss (doc. 19) filed by Defendants Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital Inc. Trust 2006-HE3 and Wells Fargo Bank, N.A. d/b/a/ America's Servicing Company.

Specifically, the Court **GRANTS** the Motion as to Plaintiffs' breach of contract claim but recognizes that Plaintiffs have alleged an additional basis for this claim, which Defendants have not moved to dismiss or otherwise discussed. The Court further **GRANTS** the Motion as to Plaintiffs' claims for violations of sections 392.304(a)(8), 392.304(a)(19), and 392.301(a)(8) of the TDCPA and as to Plaintiffs' request for an accounting. In addition, to the extent Plaintiffs seek to assert a "claim for unclean hands," the Court **GRANTS** Defendants' Motion on this matter, as it is not a recognized cause of action.

The Court **DENIES** the Motion as to Plaintiffs' claim for violation of section 392.303(a)(2) of the TDCPA and as to their request for a declaratory judgment.

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears certain that such repleading would be futile. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("[A] court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Because this Order is the Court's first review of Plaintiffs' allegations, the Court concludes that Plaintiffs should be given the opportunity to replead their breach of contract claim and their claims for violations of sections 392.304(a)(8), 392.304(a)(19) and 392.301(a)(8) of the TDCPA. The Court further concludes, however, that it would be futile to allow Plaintiffs to replead their "claim for unclean hands" and their request for an accounting, as these claims suffer from deficiencies that cannot be remedied by pleading additional facts.

If Plaintiffs are able to replead and overcome the grounds for dismissal described above, they should do so by no later than thirty (30) days from the date of this Order.


SO ORDERED.

SIGNED: July 7, 2015.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE