UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORGE CLARK and VELMA CLARK, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-3590-B |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, As Trustee For Morgan Stanley ABS Capital Inc. Trust 2006-HE3, and WELLS FARGO BANK, N.A. d/b/a AMERICA'S SERVICING COMPANY, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Deutsche Bank National Trust Company's (Deutsche) and Wells Fargo Bank, N.A. d/b/a America's Servicing Company's (ASC) (collectively, Defendants) Motion to Dismiss (Doc. 41). For the reasons that follow, the Court **GRANTS** Defendants' Motion in its entirety and **DISMISSES** all of Plaintiffs' claims **with prejudice**.

## I.

## BACKGROUND

On July 7, 2015, this Court granted in part and denied in part Defendants' Motion to Dismiss Plaintiffs George and Velma Clark's (the Clarks) Complaint. Doc. 33, Mem. Op. & Order.[1] It dismissed the Clarks' claims for breach of contract; violations of the Texas Debt Collection Practices Act §§ 392.304(a)(8), 392.304(a)(19), and 392.301(a)(8) (TDCA or the Act); and "unclean

---

[1] That Order adequately describes the background facts in this case. *See* Doc. 33, Mem. Op. & Order at 1–5. For that reason, the Court will not do so here.

hands." *Id.* at 23. It also denied their request for accounting. *Id.* The Court declined, however, to dismiss the Clarks' claim under TDCA § 392.303(a)(2) and their request for a declaratory judgment. *Id.* It also provided Plaintiffs with the opportunity to replead their breach of contract and TDCA claims brought under sections 392.304(a)(8), 392.304(a)(19) and 392.301(a)(8) of the Act. *Id.*

On August 6, 2015, the Clarks filed their second amended complaint, Doc. 37, Second Am. Compl., but Defendants again moved to dismiss it. Doc. 41, Mot. to Dismiss. The Clarks then responded, Doc. 44, Pls.' Resp., and Defendants replied. Doc. 46, Defs.' Reply. Accordingly, the Motion is now ready for review.

## II.

## LEGAL STANDARD

In a case that has been removed from state court, the proper pleading standard to apply when deciding a motion to dismiss is that of the state from whose court the case has been removed. *Craig Penfold Props., Inc. v. Travelers Cas. Ins. Co.*, No. 14-CV-0326, 2015 WL 356885, at *2 (N.D. Tex. Jan. 28, 2015); *see also De La Hoya v. Coldwell Banker Mex., Inc.*, 125 F. App'x 533, 537 (5th Cir. 2005) (applying the Texas pleading standard on a motion to dismiss claims in a case removed from Texas state court); *Sutton v. Airsep Corp.*, No. 11-CV-2669, 2012 WL 253959, at *3 (N.D. Tex. Jan. 27, 2012) (applying state pleading standard on motion to remand because "state court plaintiffs should not be required to anticipate removal to federal court"). In a case removed from a Texas state court, the Court applies the Texas pleading standard. Traditionally, Texas courts have applied a more liberal pleading standard than the federal one, upholding a petition as long as it provides "fair notice of the claim involved." Tex. R. Civ. P. 45(b). In March 2013, however, the Texas Supreme Court adopted Texas Rule of Civil Procedure 91a, which provides in pertinent part:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in the law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

Tex. R. Civ. P. 91a. Though not identical to the Rule 12(b)(6) standard, the Texas Courts of Appeals have interpreted Rule 91a as essentially calling for a Rule 12(b)(6)-type analysis and have relied on the Rule 12(b)(6) case law in applying Rule 91a. *See Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied). Accordingly, this Court will do the same.

Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

### III.

### ANALYSIS

*A.     The Breach of Contract Claim*

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citations omitted).

When this Court ruled on Defendants' first Motion to Dismiss, it considered the Clarks' two, separate breach of contract claims—(1) that Defendants refused to apply the payments they made to their account; and (2) that Defendants misapplied the received payments, thus violating Section 2 of the Deed of Trust. Doc. 33, Mem. Op. & Order 13. Though the Court dismissed the refusal claim, it allowed the Clarks to re-brief the misapplication claim, finding that, "'[a]t the very least, [Plaintiffs] must [1] identify which payments were misapplied[,] . . . [2] state [their] reasons for believing they were misapplied,' [and] [3] not[e] why the application of the payments conflicts with the Deed of Trust." *Id.* (quoting *Searcy v. Wells Fargo Home Mortg.*, No. 3:14-CV-3411, 2015 WL 1182836, at *3 (N.D. Tex. Mar. 16, 2015)). The Clarks have now done that, but Defendants continue to maintain that their breach of contract claim should be dismissed. They offer three reasons in support. They say the Clarks have not sufficiently alleged that: (1) Defendants misapplied the payments (i.e. breached the contract); (2) they (the Clarks) performed their obligations; or (3)

they suffered damages. Doc. 41, Mot. to Dismiss 9–12. The Court now considers each of Defendants' arguments.

    1.    <u>Misapplying Payments</u>

In their Second Amended Complaint, the Clarks attempt to clarify, and thus save, their misapplication claim. To do so, they cite a May 4, 2011, monthly mortgage statement (the Statement), which shows that Defendants applied a twenty dollar payment to their escrow account. Evidently, the Loan Agreement calls for Defendants to apply such payment to interest, principal, escrow, and late charges—in that order. Doc. 37, Second Am. Compl. ¶ 27 (citing Doc. 37-1, Ex. A, Deed of Trust § 2; Doc. 37-3, Ex. C., Mortgage Statement).

Defendants agree that, generally, payments flow in such a manner, but with an important caveat—that "[s]uch 'payments shall be applied to each [P]eriodic [P]ayment in order in which it became due.'" Doc. 41, Mot. to Dismiss 9 (citing Doc. 37, Second Am. Compl. ¶ 27; Doc. 42, Defs.' App. 11, Ex. B, Deed of Trust ¶ 2). Thus, while Defendants must apply payments to interest, principal, escrow, and late charges—in that order—first, it must determine *which* Periodic Payment is most delinquent. Only then, within that particular Periodic Payment, does it apply the above hierarchy.

That established, the Court is left with the task of figuring out which Periodic Payment was most delinquent as of May 4, 2011—the date Defendants purportedly misapplied the Clarks' twenty-dollar payment. Looking at the Statement, it appears that the Clarks had (1) an Escrow balance of $6,670.01 and a (2) payment due for "Principal and/or Interest, Escrow" of $1,352.12 as of that date. *See* Doc. 37-3, Ex. C, Mortgage Statement. As the Clarks contend, however, nothing in the

statement indicates "which of the purportedly delinquent amounts became due earlier." Doc. 45, Pls.' Resp. 11; *see also* Doc. 37-3, Ex. C, Mortgage Statement.

Defendants do not seem to contest this fact. *See* Doc. 46, Defs.' Reply 3–6.[2] Rather, they allege the Clarks have inadequately pled two other elements of a breach claim: that Plaintiffs themselves performed or suffered damages. *See id.* Thus, the Court concludes that the Clarks have adequately plead the breach element of a breach of contract claim, and it moves on to consider whether they have done the same for the cause's other elements.

### 2. The Clarks' Default (Plaintiffs' Performance)

The question here is whether the Clarks have pled facts that demonstrate they performed or tendered performance under the Loan. Rather than argue that they actually have, the Clarks take a different tack and resort to a policy argument. They suggest that, because Paragraph 2 of the Deed of Trust's flow of payments provision comes into effect only after a lender claims default and elects acceleration, it would be impossible for them to ever raise a misapplication claim, since, every time they tried to do so, they themselves would have already breached by defaulting. Doc. 45, Pls.' Resp. 12 (citing *Hernandez v. U.S. Bank, N.A.*, 3:13-CV-2164, 2013 WL 6840022 (N.D. Tex. Dec. 27, 2013)). This would, of course, preclude a breach claim. Under such a reading, then, "every provision

---

[2] Defendants do, however, argue that applying the above payment order—principal, interest, late charges, and escrow—"would lead to nonsensical results." Doc. 41, Mot. to Dismiss 10. Such an order, Defendants say, would prevent them "collect[ing] any escrow payments from Plaintiffs until Plaintiffs had paid *all* interest and principal on the Loan," thus allowing plaintiffs to "continue to neglect making payments for the escrow items," and "barr[ing] Defendants . . . from applying any payments to the escrow account until Plaintiff had essentially finished paying off the loan." *Id.* "This is obviously not the intent of the Deed of Trust," according to Defendants. *Id.* Indeed, it may not be. But a system where one first determines which Periodic Payment is most delinquent, then follows the above order within that particular payment, would not necessarily lead to the admittedly-absurd result Defendants fear. Thus the Court is not prepared to interpret this contractual term outside its plain meaning, especially in the context of a Motion to Dismiss.

of the Deed of Trust contract that addresses obligations in the event of a default would be rendered surplusage," or so the Clarks say. *Id.* (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003)).

Defendants do not directly respond to this argument, but, instead, try to differentiate the cases the Clarks cite—*Franklin v. BAC Home Loans Servicing, L.P.*, No. 3:10-CV-1174, 2011 WL 248445, at *2 (N.D. Tex. Jan. 26, 2011), and *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 580 (N.D. Tex. 2013). Doc. 46, Defs.' Reply 4. They insist *Franklin* is different because, there, the plaintiffs "ask[ed] the Court to disregard their non-performance under the Loan . . . [in relation to] . . . provisions that *only come into effect when a borrower is in default.*" *Id.* (citing *Franklin*, 2011 WL 248445, at *2) (emphasis added). Here, in contrast, Defendants argue that the flow of payment provisions at issue do not "only come into effect when the loan is delinquent." *Id.* (emphasis omitted). Thus, they seem to insinuate that it would not necessarily be "illogical for the Court to conclude that Plaintiff cannot enforce [Defendants'] obligations," because, unlike those of the *Franklin* defendants, the Clarks' obligations do not necessarily "arise [only] after Plaintiff[]s['] default [and] merely because Plaintiff is in default." *Id.* (emphasis omitted); Doc. 45, Pls.' Resp. 12. In other words, Defendants say their obligations are not contingent upon the Clarks breaching; there are situations where they might be obligated to follow the payment flow procedure even when the Clarks have performed.[3]

---

[3] Defendants also distinguish the facts here from those in *Peters v. JP Morgan Chase Bank, N.A.*, 600 F. App'x 220 (5th Cir. 2015). There, the Fifth Circuit denied the defendant's Motion to Dismiss based on the fact that the plaintiff could argue that the defendant's rejection of her mortgage payments rendered her performance impossible. *Id.* at 224. Here, in contrast, Defendants says their own actions did not cause the Clarks' breach, which occurred before Defendants' own alleged breach. Doc. 46, Defs.' Reply 3–4.

Indeed, the part of the Deed of Trust the Clarks say Defendants breached does not only come into effect post-default. Looking at that section, it appears that, at all times—not just in the event of a default—Defendants must adhere to the payment flow order. *See* Doc. 42, Defs.' App. 11, Ex. B, Deed of Trust ¶ 2. Thus, the Clarks would not necessarily have had to default before bringing a misapplication claim. Thus, no rationale, policy-based or otherwise, exists to excuse the fact that they failed to perform—which, again, they seem to concede occurred. *See* Doc. 45, Pls.' Resp. 11–12.

Accordingly, having failed to sufficiently plead facts that would demonstrate their own performance, the Court **DISMISSES** the Clarks' breach of contract claim.[4]

B.  *The TDCA Claims*

In its Order dismissing portions of the Clarks' prior complaint, the Court allowed the Clarks to replead their claims under sections 392.304(a)(8), 392.304(a)(19), and 392.301(a)(8) of the TDCA, Doc. 33, Mem. Op. & Order at 23, and declined to dismiss their 392.303(a)(2) claim. *Id.* at 20. The Clarks now bring their amended TDCA claims under sections 392.304(a)(8) and 392.304(a)(19), which Defendants again move to dismiss, along with Plaintiffs' remaining 392.303(a)(2) claim. Doc. 37, Second Am. Compl., ¶¶ 29–37. The Court now considers whether any of the three may stand.

---

[4] Because the Court finds the Clarks have not sufficiently pled that they themselves performed under the agreement, it need not decide whether they have also alleged adequate damages to survive Defendants' Motion to Dismiss. *See* Doc. 41, Mot. to Dismiss 18; Doc. 45, Pls.' Resp. 13–14; Doc. 46, Defs.' Reply. Assuming *arguendo* that they did allege performance, still, the Clarks have not adequately alleged damages arising from Defendants' breach. Rather, all they say is that, "[a]s a proximate result of the foregoing wrongful conduct by Defendants, Plaintiffs have incurred damages." Doc. 37, Second Am. Compl. ¶ 28. This is the sort of "conclusory statement[]" impermissible under *Iqbal*. 129 S. Ct. at 1949.

1. <u>The Section 392.304(a)(8) and 392.304(a)(19) Claims—Misrepresenting the HAMP Loan</u>

Generally, under the TDCA:

> [C]ollecti[ng] [a debt] or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that . . . [1] misrepresent[s] the character, extent, or amount of a consumer debt[,] . . . [2] misrepresent[s] the consumer debt's status in a judicial or governmental proceeding[,] . . . [or] [3] us[es] any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

Tex. Fin. Code Ann. § 392.304(a)(8), (19). Misrepresentation is an affirmative statement that is false or misleading. Doc. 41, Mot. to Dismiss 14–15 (citing *Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x. 345, 348 (5th Cir. 2014)).

   *i. Whether Defendants made any representations to the Clarks at all*

The first issue here is whether Defendants made any representations to the Clarks at all. Defendants, for their part, concede that ASC communicated with the Clarks regarding the loan when it sent them the December 13, 2013, letter. Still, they maintain Deutsche never did—or, at least, that the Clarks failed to allege Deutsche ever did—since the amended complaint indicates it was the Clarks who "requested an affordable home loan modification" in both 2011 and 2013. Doc. 46, Defs.' Reply at 8 (citing Doc. 37, Second Am. Compl. ¶¶ 17, 22, 33); *see* Doc. 41, Mot. to Dismiss 15–16. The Clarks, in turn, point to another section of the Second Amended Complaint, where they allege that "Defendants deceptively instructed and encouraged Plaintiffs to apply for the HAMP loan modification, and represented that the loan was in underwriting, even though [Defendants] did not really modify Texas Home Equity Loans." Doc. 45, Pls.' Resp. 15 (citing Doc. 37, Second Am. Compl. ¶ 33). "[A]ccept[ing] as true all well-pleaded facts[,] and view[ing] them in the light most favorable to the plaintiff," the Court finds there were indeed representations from

both Defendants, and so Defendants' first argument fails. *Watson v. Texas*, 261 F.3d 436, 440 (5th Cir. 2001).

> ii. *Whether loan modification discussions are categorically inactionable under Sections 392.304(a)(8) and/or 392.304(a)(19)*

Having established the Clarks' alleged communication with both Defendants, the Court must determine whether the Clarks have alleged facts rendering those communications actionable under TDCA §§ 392.304(a)(8) and 392.304(a)(19). Defendants argue that a loan modification is categorically *not* debt collection activity, and therefore cannot be a misrepresentation about the amount or character of a debt, rendering it inactionable under the TDCA provisions at issue here. Doc. 41, Mot. to Dismiss 15 (citing *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015); *Johnson v. Wells Fargo Bank*, NA, 999 F. Supp. 2d 919, 933 (N.D. Tex. 2014); *Teeples v. JPMorgan Chase Bank, N.A.*, No. 4:12-CV-795, 2013 WL 1898287, at *6 (E.D. Tex. Apr. 9, 2013) (parentheticals omitted)).[5] The Clarks insist that "loan modification discussions and the collection of a debt are not mutually exclusive . . . [but] can take place in the same communication." Doc. 45, Pls.' Resp. 16. Accordingly, they say, "'there may be circumstances in which misrepresentations made during such discussions are actionable [under § 392.304(a)(19)].'" *Id.* at 16–17 (*quoting Thompson*, 783 F. 3d at 1028).

This is a close call. First, *Thompson* makes clear that loan modification discussions are categorically inactionable under subsection 8. *Thompson*, 783 F.3d at 1026. So the Clarks cannot bring their claims under that provision. Subsection 19, however, remains viable. The question is whether the allegations here come within its ambit. According to the Clarks, Defendants (1)

---

[5] It bears mentioning that this argument addresses only subsection 8.

-10-

"deceptively instructed and encouraged Plaintiffs to apply for the HAMP loan modification"; (2) "represented that the loan was in underwriting, even though ASC did not really modify Texas Home Equity Loans"; and (3) "made affirmative statements about Plaintiffs' loan and a HAMP loan modification [in the letter] . . . [when] these statements were false and misleading in that HAMP loan modifications on Texas Home Equity Loans were not available from ASC." Doc. 37, Second Am. Compl. ¶¶ 33–34.

"[A]ccept[ing] as true all well-pleaded facts[,] and view[ing] them in the light most favorable to the plaintiff," the Court finds the Clarks' allegations come within subsection 19. *Watson*, 261 F.3d at 440. Assuming what the Clarks say is true, Defendants implored them to apply for a home equity loan despite the fact that—no matter what the Clarks submitted—they would be denied. This is because HAMP loans are, and were at that time, simply unavailable on Texas home equity loans. *See* Tex. Const., art XVI § 50(a)(6)); Doc. 37, Second Am. Compl. ¶¶ 33–34. These allegations, if true, easily suggest Defendants "use[d] false representations [and]/or deceptive means to . . . obtain information concerning a customer," since the Clarks allegedly followed up by sending the requested information to Defendants. Doc. 37, Second Am. Compl. ¶ 32.

This Court is not alone in concluding these sort of facts may fall under subsection 19, either. In *Pineda v. Nationstar Mortgage, LLC*, 3:15-CV-1036, 2015 WL 6438154 (N.D. Tex. Sept. 29, 2015), *report and recommendation adopted*, 3:15-CV-1036, 2015 WL 6460017 (N.D. Tex. Oct. 21, 2015), for instance, the plaintiff there alleged that the defendant told him that it could reduce his monthly payments if, in return, the plaintiff produced a number of documents and explained his payment delinquency. *Id.* at *1, 4. Instead, the plaintiff says he produced the documents, the defendant ignored him, and his property was sold anyway. *Id.* Here, in slight contrast, Defendants

did not flat-out promise the loan modification, but in their alleged request for the Clarks to submit materials, still implied the Clarks would at least be *considered* for the program. Given that this is impossible under Texas law, because Texas home equity loans are categorically ineligible for HAMP loans, imploring the Clarks to submit the above materials involves using "deceptive means to . . . obtain information concerning a customer."[6] Tex. Fin. Code Ann. § 392.304(a)(19).

Still, the Clarks have one more hurdle to clear before their subsection 19 claim survives. To sustain any TDCA claim, one must prove damages. "[H]arm incurred [that] was a reasonably foreseeable result of the wrongdoer's conduct" is sufficient. *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). But Defendants argue that, because the Clarks were already in default at the time of the alleged TDCA violation, they have alleged nothing to suggest that, "but for the December 13, 2013 letter, Plaintiffs would have cured the default on their Loan obligations, or the delinquency on their payments." Doc. 41, Mot. to Dismiss 17. Nor do they "even draw a causal connection between the alleged TDCA violations and any alleged damages," according to Defendants. *Id.* at 18. The Clarks respond by reiterating that they "have pleaded that they suffered attorneys' fees, credit damage, and mental anguish," and so "Defendants' Motion to Dismiss must be denied." Doc. 45, Pls.' Resp. 18 (citing Doc. 37, Second Am. Compl. ¶¶ 36, 37, 43).

---

[6] Whether Defendants were aware that HAMP loans were unavailable on Texas home equity loans does not matter. The Deceptive Trade Practices Act, a statute tied to the TDCA, "provides *additional damages* for statutory violations that are committed 'knowingly.'" *Wallace Roofing, Inc. v. Benson*, 03-11-00055-CV, 2013 WL 6459757, at *7 (Tex. App.—Austin Nov. 27, 2013) (emphasis added). Thus knowledge only amplifies damages. It is not a prerequisite. Defendants need not necessarily be aware of the deceptive nature of their actions in order for a Plaintiff to prevail under the statute. If, however, Defendants were unaware of the deceptive nature of their actions, they are free to plead "bona fide error," as "[t]he TDC[]A provides a defense for debt collectors accused of statutory violations upon proof that the 'violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably calculated to avoid such error.'" *Id.* (citing Tex. Fin. Code § 392.401). But there is no indication that Defendants have raised this affirmative defense here. *See generally* Doc. 41, Mot. to Dismiss.

Again, a close call. As a preliminary matter, it is worth noting that *Brown* suggests that the harm claimed must have been merely a "reasonably foreseeable result" of alleged misconduct under the TDCA; it does not require that the harm be the sole result of a defendant's acts. Regardless, Defendants are right. The Clarks have drawn no causal connection between any of Defendants' alleged misconduct under the TDCA and the harm they suffered. More specifically—and in reference to the Clarks' only remaining, possibly-viable claim, brought under section 392.304(a)(19)—Plaintiffs have not alleged that the damages they suffered were a "reasonably foreseeable result" of Defendants' inducing them to send application materials for a loan modification program (HAMP) for which they could never qualify.

Accordingly, the Court **DISMISSES with prejudice the** Clarks' TDCA claims under sections 392.304(a)(8) and 392.304(a)(19).

2. The Section 392.303(a)(2) Claim—No Collecting/Attempt At Collecting Interest, Charges, Fees, and Incidental Expenses Unless Expressly Authorized by Agreement

Next, the Court considers whether the Clarks have adequately repled their TDCA § 392.303(a)(2) claim, which prohibits debt collectors from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the [debt] obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code Ann. § 392.303(a)(2).

The Clarks claimed, as they did in their original complaint, that Defendants "violated § 392.303(a)(2) by collecting unauthorized incidental charges," and "[that] [t]he attempted foreclosure was improper," rendering "any fees incurred as a result of the attempted foreclosure . . . unauthorized." Doc. 37, Second Am. Compl. ¶ 35. Defendants originally moved to dismiss this

claim on grounds that the Clarks "fail[ed] to specifically identify any interest, fees or charges that Defendants attempted to collect that were not authorized." Doc. 33, Mem. Op. & Order 18 (citations omitted). The Court did not do so, however, because "[Defendants] present[ed] no authority establishing that such specificity is required at the pleading stage to state a claim for a violation of section 392.303(a)(2)." *Id.* (citations omitted).

Now, Defendants again move to dismiss the claim, this time marshaling a litany of cases to support their argument that specificity *is* required to plead a § 392.303(a)(2) violation. Doc. 41, Mot. to Dismiss 18–19. In response, the Clarks again reference this Court's previous order, discussed above, and point to *Sanchez v. Bank of America, N.A.*, No. 3:14-CV-2571, 2015 WL 418084 at *4 (N.D. Tex. Jan. 30, 2015), a case where this Court declined to dismiss a similar claim based on lack of pleading specificity. Doc. 45, Pls.' Resp. 18 (citing Doc. 33, Mem. Op. & Order 18). Defendants reply by reiterating that, here, pursuant to the Court's earlier order, it *has* presented case law demonstrating specificity is required, and, further, that the Clarks' claim—that Defendants have not distinguished *Sanchez*—is "disingenuous." Doc. 46, Defs.' Reply 9.

The Court's task is clear: (1) determine whether § 392.303(a)(2) requires pleading with specificity—and, if so, what specificity is required—then (2) decide whether the Clarks have so pled. It takes up each question in turn.

"Specificity" is ill-defined in the § 392.303(a)(2) context. Nevertheless, the Court compares the facts in the cases Defendants cite to those here and concludes that the Clarks' allegations are similar enough to warrant the same outcome—dismissal. For instance, in *Westinde v. JPMorgan Chase Bank*, N.A., 3:13-CV-3576, 2014 WL 4631405, at *8 (N.D. Tex. Sept. 16, 2014), the plaintiff alleged that the late fees and penalties that the defendant imposed were "unauthorized" and

"incidental" because "'Defendant should not have declared Plaintiff in default.'" *Id.* (citations omitted). This was insufficient to withstand the defendant's Motion to Dismiss. Similarly, here, the Clarks allege that "Defendants also violated §392.303(a)(2) by collecting *unauthorized incidental* charges," and that "[t]he attempted foreclosure was improper; and therefore any fees incurred as a result of the attempted foreclosure were unauthorized." Doc. 37, Second Am. Compl. ¶ 35 (emphasis added). This language is very close to the Plaintiff's in *Westinde*. Accordingly, in light of the fact that Defendant has pointed to relevant authority to demonstrate the level of specificity required to plead a § 392.303(a)(2) claim, which in turn demonstrates that the Clarks have failed to meet such a threshold, the Court **DISMISSES** Plaintiffs' § 392.303(a)(2) claim **with prejudice.**[7]

C.   *The Declaratory Relief Claim*

Next comes Plaintiffs' declaratory relief claim. Here, the Clarks ask the Court to declare that (1) they have not "materially breached" the Deed of Trust; (2) Defendants have breached both the Note and Deed by misapplying their payments; and (3) Plaintiffs' breach claim is separate from their TDCA clams. Doc. 37, Second Am. Compl. ¶¶ 38–42. Defendants insist that, because the breach

---

[7] The Fifth Circuit has not considered a set of closely analogous facts. But in *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 240 (5th Cir. 2014), it held that "conclusory allegation[s]" that (1) "[Defendant] 'imposed numerous charges'"; (2) "any charges associated with the foreclosure were 'unfair and unconscionable'"; and (3) "their account was assessed wrongful charges related to taxes and insurance on the property," together, were "insufficient to state a claim under Section 392.303(a)(2)." *Id.* at 240; *see also Fields v. JP Morgan Chase Bank, N.A.*, No. 15-10034, 2016 WL 197191, at *2 (5th Cir. Jan. 15, 2016). So, while it is not certain that the Fifth Circuit would reach the same conclusion reading the Clarks' Complaint, in light of *Westinde* and the other cases Defendants cite, the Court believes our appellate counterparts would also uphold a decision dismissing a complaint worded similarly to the Clarks'. *See* Doc. 41, Mot. to Dismiss 19 (citing *Price v. U.S. Bank Nat. Ass'n*, 3:13-CV-175, 2014 WL 803722, at *6 (N.D. Tex. Feb. 28, 2014), *appeal dismissed* (Apr. 29, 2014); *Bircher v. Bank of New York Mellon*, 4:12-CV-171, 2012 WL 3245991, at *3 (N.D. Tex. Aug. 9, 2012); *Swim v. Bank of Am., N.A.*, 3:11-CV-1240, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 2012); *Wilkerson v. Citimortgage, Inc.*, 3:11-CV-1393, 2011 WL 6937382, at *5 (N.D. Tex. Oct. 24, 2011), *report and recommendation adopted*, 3:11-CV-1393, 2012 WL 11039 (N.D. Tex. Jan. 3, 2012)).

and TDCA claims fail, the Court should deny the Clarks' request for a declaratory judgment. Doc. 41, Mot. to Dismiss 20. The Clarks respond by revisiting the allegations in their complaint. Doc. 45, Pls.' Resp. 19 ("As shown above, Plaintiffs have pleaded claims for breach of contract and violations of the TDCA, sufficiently to survive a 12(b)(6) motion to dismiss."). Given its above rulings, the Court sides with Defendants here. *See supra* Sec. III(1)–(2).

Accordingly, the Court **DISMISSES with prejudice** the Clarks' request for declaratory relief.

D.     *The Request for an Exemplary Damages Finding*

Plaintiffs also insist that their Second Amended Complaint "include[s] factual allegations that would warrant exemplary damages for gross negligence or fraud," and, accordingly, insist that their "request for . . . a finding of exemplary damages should not be dismissed." *Id.* (citing Doc. 37, Second Am. Compl, ¶¶ 21–24, 33). Again, the Court does not agree. As Defendants point out, "Plaintiffs have failed to plead an underlying claim which makes a plausible showing that Defendants acted fraudulently or with gross negligence," which is necessary for exemplary damages. Doc. 41, Defs.' Mot. to Dismiss 20 (citing *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d. 725, 735 (N.D. Tex. 2011)).[8] Exemplary damages are available "only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence," or, alternatively, when "a statute establish[es] a cause of action and authoriz[es] [them] . . . in specified circumstances or in conjunction with a specified culpable mental state." Tex. Civ. Prac. & Rem. Code Ann. § 41.003. In the latter circumstance, a court may award such damages "only if the claimant proves by clear and

---

[8] *Biggers* adds malice as a possible element. *Biggers*, 767 F. Supp. 2d. at 735.

convincing evidence that the damages result from the specified circumstances or culpable mental state." *Id.* In any event, the Clarks have pled nothing to implicate either. Accordingly, the Court **DISMISSES with prejudice** the Clarks' request for an exemplary damages finding.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss in its entirety. The Court **DISMISSES** all of Plaintiffs' claims **with prejudice.**

SO ORDERED.

SIGNED: March 11, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE